*J. W. Gordon,* for appellant.

---

## SANDERS *v.* SANDERS and Others.

VERDICT.—The verdict of a jury, when returned into court, and filed by the clerk, becomes a paper pertaining to the cause, and a part of the record, without being copied into the order book. .

LOST VERDICT.— A lost verdict, like any other paper forming a part of the record, may be supplied by a proved copy.

DISMISSAL AFTER RETIREMENT OF JURY.—The plaintiff has no right to dismiss his case, to the prejudice of the defendant, at any time after the jury retires to consider of their verdict.

APPEAL from the *Monroe* Circuit Court.

GREGORY, J. — *Leroy M. Sanders* and *Frances A.,* his wife, commenced this action in the court below in *April,* 1861. They allege in their complaint, that *Wright Sanders* died seized of a farm in *Monroe* county, and a tract of land in

*Owen* county, describing them; that previous to his death he made his will, whereby he bequeathed to his wife, *Polly Sanders*, during her natural lifetime, the farm in *Monroe* county, and that upon her death, the same should belong to one or the other of his sons, *David or Nathan*, the ownership to depend upon the condition, that whichever married first, or should undertake to farm for himself, was to have the land in *Owen* county, and the other was to reside upon the farm in *Monroe* county, and cultivate the same, and provide the said *Polly* with a comfortable support during her lifetime, and that upon her death he was to be the absolute owner thereof in fee; that *David* married first, thereby entitling himself to the land in *Owen* county, but that *David* and *Nathan*, subsequently to the death of the testator and the marriage of *David*, made an agreement whereby *David* agreed to pay *Nathan* $500, upon the condition that *Nathan* would relinquish his right to the farm in *Monroe* county to *David*, and would take the land in *Owen* county; that, in pursuance of the agreement, *Nathan* took possession of the land in *Owen* county, and continued in possession thereof until his death, and that *David* had resided with his mother upon the home farm until his death; that *Nathan* died unmarried and childless, and left his mother and brothers and sisters as his heirs; that *David* intermarried with *Frances A.*, one of the plaintiffs, and that the fruit of the marriage was a son, *Lorenzo A.;* that *David* had departed this life, leaving as his heir, *Lorenzo A.*, who had, subsequent to the death of his father, and while he was an infant, departed this life, leaving as his only heir his mother, *Frances A.*, who had intermarried with her co-plaintiff, *Leroy M. Sanders;* that the mother, brothers and sisters of *David* and *Nathan*, claimed that the farm in *Monroe* county belonged to *Nathan*, and had upon his death descended to them; and prayed that the plaintiffs should be decreed the owners thereof, that their title should be quieted thereto, and that any cloud

that had been cast upon their title should be removed. Issues were formed upon this complaint.

*Polly Sanders*, the appellant, filed a cross-complaint against the plaintiff and her co-defendants, in which she alleged, in substance, that under and by virtue of the will of *Wright Sanders*, she had a life estate in the farm, and that a comfortable support was to be furnished her by whichever of the sons resided with her, and that upon her death the same should descend to the one that remained with her, upon the express condition that he should reside upon the farm, cultivate it, and provide her with a comfortable support during her lifetime; that *David* married first; that subsequently to the death of *Wright*, and the marriage of *David*, the latter and *Nathan* made an agreement, whereby *David* agreed to pay *Nathan* $500, upon the condition that the latter would relinquish his right under the will to the farm in *Monroe* county to the former, and would take the land in *Owen* county; that *David* quit-claimed to *Nathan* his interest in the land in *Owen* county, and the latter quit-claimed to the former his interest in the farm in *Monroe* county; that *Nathan* entered into and retained the possession of the land in *Owen* county until his death; that he died unmarried and childless, and that the appellant inherited one-half of his estate, and his brothers and sisters the other moiety; that *David* did not pay *Nathan* the $500, or any part thereof; that subsequently to the death of the latter, she, the said *Polly*, *David*, and the administrator of *Nathan's* estate, met together, and entered into an arrangement, whereby the administrator released *David* from the payment of the said sum of money to him; that *Polly* gave the administrator a receipt for $500, as the payment to that amount of the sum that was due her as the heir of *Nathan;* that *David* agreed and promised to pay her, the said *Polly*, the $500 so due from him to the estate of *Nathan*, which she had so paid for him; that neither *David*, previous to his death, nor his administrator since his death, had paid said sum, or any

part thereof to her. That *David* and his wife had resided with her upon the farm until his death, but that he had failed and neglected to properly cultivate the farm, and to provide her with the kind of support that was required by the will; that after the death of *David, Frances A.* had wholly and absolutely failed and refused to reside with her upon the farm, and aid in the management and cultivation thereof, but had abandoned her in her old age to live alone, or to depend upon the care and attention of strangers, whom she was forced to employ; that, in consequence of such failure, she had been subjected to great expense and inconvenience. She demanded a judgment against whoever was the owner of the farm for $500, the payment of which had been so promised by *David* as aforesaid, and for such further sum as would compensate her for the damage she had sustained, and would continue to sustain, by reason of the refusal of *Frances A.* to comply with the conditions of the will, and that whatever judgment she might recover should be a lien and charge upon the farm.

To this cross-complaint the plaintiffs answered in seven paragraphs, the first of which was the general denial; the second, third, fourth and fifth were stricken out on motion, and a demurrer was sustained to the sixth. To the seventh paragraph there was a reply, which is not, however, set out in the transcript.

The issues were, at the *April* term, 1862, submitted to a jury. The court, at the request of the parties, directed the jury to find specially on the issues, and, at the like request, the court submitted to the jury interrogatories covering the questions of fact embraced in the issues. The jury returned into court their finding, which the court directed to be recorded, but before the record was made the paper on which the verdict was written was lost.

The cause was continued from term to term, until the *November* term, 1863, when the appellant submitted a written motion, averring the loss of the verdict and diligent search therefor, setting forth a copy of the lost paper, and

asking to be allowed to prove the loss and contents thereof, and that the copy, if found true, should be recorded in place of the original, and judgment rendered thereon according to the respective rights of the parties. This motion was dismissed by the court, over the objection of the appellant. Thereupon the appellant moved the court for leave, and offered to prove by competent witnesses the existence, loss, and contents of the special finding. The court refused to entertain the motion.

The appellees than moved the court to set aside the submission which was made at the *April* term, 1862; which motion was sustained, and the submission set aside, over the objection of the appellant.

The appellees then dismissed their complaint.

The appellant then moved the court for a trial of the issues formed upon her cross-complaint; which motion the court overruled, and, over the objection of the appellant, dismissed the cross-complaint. Exceptions were taken to all of these rulings.

The appellant was a material party, and had an interest in the verdict, whether her cross-complaint is viewed as a cross-bill in chancery, or a counter-claim under the statute.

The verdict, when returned into court and filed by the clerk, became a "paper pertaining to the cause," and a part of the record, without being copied into the order book. 2 G. & H. § 559, p. 273.

A lost verdict, like any other paper forming a part of the record, may be supplied by a proved copy. See 2 G. & H., § 93, p. 113; *Lippencott* v. *Wygant*, 2 Ind. 661.

Judge HITCHCOCK, in delivering the opinion of the court, in the case of *Ludlow's Heirs* v. *Johnson* (3 Ohio Rep. 553,) correctly says, in speaking of courts of record, that, "The proceedings, orders, judgments, decrees of such courts do not rest in parol. It is by their records they speak, and there is but one mode, as a general rule, known to the law, by which their acts can be proven, and this is by the record

itself.   True, there are cases where, after the loss or destruction of a record, you may prove its contents.   In such case all has been done by the court which could be done — a record, which is the legal evidence to prove its acts, has been made.   The rights of all parties concerned are fixed, and those rights ought not to be affected by time or accident.   But before the contents of a record can be proved, it must be shown that it once existed, and had been lost by time or accident."

In the case in judgment, the entry on the order book showed that the verdict had been returned into court; it was a paper under the control of the court, and the mode proposed to prove its loss and contents is unobjectionable.

The plaintiffs had no right to dismiss their case, to the prejudice of the appellant, at any time after the jury retired to consider of their verdict.   2 G. & H., § 363, p. 216.

We decide nothing further than that the finding of the jury, as offered to be proved, was material to the interests of the appellant.   The question as to what relief she is entitled to under it, is not now before us, nor is it important to inquire whether her cross-complaint is a counter-claim, within the meaning of the statute.

The judgment is reversed, with costs, and the cause remanded to said court, with direction to set aside the proceedings subsequent to the motion to prove the loss and contents of the finding of the jury.

*P. S. Dunning, Buskirk & Broadwell,* and *McDonald & Roache,* for appellant.

*A. G. Porter* and *W. P. Fishback,* for appellees.